**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

GARY PREWITT, GLACIER PARK )
INVESTMENTS, LLC, and SHADY, LLC )
 )
  Plaintiffs, )
 ) Case No. 09-04126-CV-C-NKL
  v. )
 )
CAMDEN COUNTY, MISSOURI, )
CAMDEN COUNTY COMMISSION, )
BEVERLY THOMAS, CAROLYN )
LORAINE, and THOMAS GUMM )
 )
  Defendants. )

**ORDER**

Before the Court is the Motion for Summary Judgment [Doc. # 81] filed by

Defendants Camden County, Missouri, Camden County Commission, and Beverly Thomas,

Carolyn Loraine, and Thomas Gumm, in their individual and official capacities as

Commissioners of Camden County, Missouri.  For the following reasons, Defendants'

Motion for Summary Judgment is GRANTED.

**I. Factual Background**[1]

Pursuant to Mo. Rev. Stat. § 64.005 *et seq*., Defendant Camden County Commission

– the governing body of Defendant Camden County, Missouri –  established Camden

County's "Unified Land-Use Codes of 2004" ("Land Use Code"), with an effective date of

---

[1]  The Court has considered the parties' statements of undisputed fact which are
supported by evidence.  In considering each party's motion, the Court has drawn all inferences in
favor of the non-movant.

June 1, 2004. Also in 2004, Camden County appointed Robert C. Hall as "Planning Administrator." This officer's duties include the enforcement of zoning regulations. Mo. Rev. Stat. §§ 64.650, 64.865. The Camden County Commission also appointed a Camden County Planning & Zoning Commission ("Planning Commission") consisting of 11 members, with one member representing each of the 10 townships in Camden County and one member being the designated highway engineer for Camden County. The Planning Commission makes recommendations to Defendant Camden County Commission concerning proposed Zoning Map changes and amendments to the Land Use Code, following a public hearing.

Under Chapter 64 of the Missouri Revised Statutes:

> For the purpose of promoting health, safety, morals, comfort or the general welfare of the unincorporated portion of counties . . . to conserve and protect property and building values, to secure the most economical use of the land, and to facilitate the adequate provision of public improvements all in accordance with a comprehensive plan, the county commission . . . shall have power after approval by vote of the people . . . to regulate and restrict, by order of record, in the unincorporated portions of the county, the height, number of stories, and size of buildings, . . . and use of buildings, structures and land for trade, industry, residence or other purposes . . . .

Mo. Rev. Stat. §§ 64.620, 64.850. Pursuant to this grant of authority from the Missouri State Legislature, and following its approval by a vote of the people, Defendant Camden County's Land Use Code now regulates and restricts land use within the unincorporated territory of Camden County. Camden County's Land Use Code establishes zoning districts that include:

R-1     Low Density Residential
R-2     Medium Density Residential
R-3     High Density Residential

R-4     Manufactured Home Parks

B-1     Offices & Neighborhood Commercial
B-2     General Commercial
B-3     Shopping District Commercial

[Doc. # 82, Ex. F, § 803.]

## A.     The First Application to Rezone the Gator Point Property

On June 20, 2007, Plaintiff Gary Prewitt, for an LLC to be formed, filed a "General Application" ("First Application to Rezone") with Defendant Camden County's Planning Commission. Plaintiff Prewitt requested a zoning change from R-1 Low Density Residential to B-3 Shopping District Commercial for a piece of property in Seven Mile Cove known as "Gator Point." At that time, Carl Placke was the owner of record of the Gator Point property.

Pursuant to the requirements of the Land Use Code, a public hearing was scheduled on the First Application to Rezone the Gator Point property for July 18, 2007. Notice was provided to all property owners within 1,000 feet of the Gator Point property, the Village of Four Seasons – a municipality within 1-1/2 miles of the property – and the general public. Prior to the public hearing, Planning Administrator Hall prepared a "Staff Report" which recommended denial of the request for rezoning "[d]ue to the absence of any B-3 zoning to establish compatibility and the presence of a single residential lot adjacent to the property which is clearly incompatible with B-3 zoning and the very restrictive amount of access and potential for parking problems in the area . . . ." [Doc. # 82, Ex. L.] Hall also noted: "Such a small property (1.3 acres) would generally be thought of as much too small to be suitable for B-3 land-uses." *Id.*

Planning Administrator Hall reported his recommendation to deny rezoning to the Planning Commission at the public hearing on July 18. Plaintiff Prewitt was represented by Attorney Greg Williams at that meeting. Terry Summers, a local realtor, business owner, and developer, spoke in support of Prewitt's proposed rezoning. According to the minutes, "[m]any nearby residents spoke in opposition to the rezoning." [Doc. # 82, Ex. M.] The residents pointed out their concerns regarding a decrease in property values, the Sheriff's Department's lack of resources to address traffic and other complaints, the potential difficulty for emergency vehicles to respond to calls in the area, and the littering problems already created by other local bars. When the Planning Commission decided to postpone its decision, it received additional complaints by mail. On August 15, 2007, the Planning Commission reconvened and voted eight to one (with one abstention) against Plaintiff Prewitt's First Application to Rezone the Gator Point property.

Twelve days later, on August 27, 2007, Plaintiff Prewitt executed a "Contract for Sale of Residential Real Estate" agreeing to purchase the Gator Point property from Placke. [Doc. # 82, Ex. Q.] Paragraph 22 of the Contract provided that it was "contingent upon planning and/or zoning/annexation approval" and that "Buyer will take possession on 09/01/2007 and will be allowed to make improvements to the land only." *Id.* On September 6, 2007, Prewitt executed the "Placke/Prewitt Contingencies Additional Rider B," stating that the closing would occur on the property on April 1, 2008, and that the contract was "contingent upon Sunrise Beach annexation on or before September 11, 2007." *Id.* It is also uncontroverted that Prewitt placed $50,000 in earnest money into an escrow account at the time of execution

4

of the Contract for Sale, "of which $15,000 will become non-refundable upon Seller acceptance of contract." *Id.*

On September 20, 2007, after notice was published in a local newspaper, Defendant Camden County Commission held a public hearing on the First Application to Rezone the Gator Point property from residential to commercial. Prior to the hearing, Defendant Camden County Commission reviewed the written record, including Prewitt's First Application, Planning Administrator Hall's staff report, and the minutes of the July 18 hearing before the Planning Commission. Attorney Williams again appeared on behalf of Plaintiff Prewitt, arguing that Prewitt was unable to make use of the property for residential purposes and that the property had been zoned incorrectly from the beginning. Williams also argued that no one presently lived in a home on the property, that it was badly deteriorated, that the roads were adequate for B-3 zoning, and that commercial zoning was compatible with surrounding uses. Williams mentioned that Defendant Commissioner Loraine could have a conflict of interest because her husband was currently opposing him in another case. Commissioner Loraine confirmed that she was not a voting participant in the case. Kevin Kling, attorney for Placke, argued that, based on the contingencies in the contract, the potential buyer could walk away if Gator Point was not rezoned, amounting to an inverse condemnation. Three residents testified in opposition to rezoning. Ultimately, Defendant Camden County Commission approved a motion to uphold the Planning Commission's recommendation for denial of the request to rezone. On October 19, 2007, Prewitt and

Placke filed a lawsuit against Defendant Camden County Commission in the Circuit Court of Camden County, appealing the denial of the First Application to Rezone.

**B.      Petitions Requesting Annexation to the Village of Sunrise Beach**

Meanwhile, on August 13, 2007, Placke and Byou Rental Properties, LLC , both filed a "Petition Requesting Annexation to the Village of Sunrise Beach." Byou Rental Properties, LLC is the owner of property adjacent to Gator Point where Plaintiff Shady Gators Restaurant is located. Prewitt is the sole member of Byou Rental Properties, LLC. A public hearing was scheduled for August 27, 2007, before the Trustees of the Village of Sunrise Beach. According to the minutes, eight residents attending the public hearing voiced opposition to both Petitions for Annexation, and only Prewitt spoke in support of the annexation. Concerns raised by these individuals included increased traffic, increased number of boats in the cove, decreased property values, how Sunrise Beach could adequately provide police and fire protection to an area across the lake, and the fact that Defendant Camden County's Planning Commission had determined that the area was not appropriate for expansion. For example, "Patty Cravens, 641 Imperial Point, Horseshoe Bend, pleaded to the Board not to allow one person to gain and 200 people to lose." [Doc. # 82, Ex. Z.] The meeting was adjourned with the trustees deciding to address the Gator Point annexation issue at their September 10, 2007 meeting.

On August 30, 2007, Defendant Camden County Commission wrote a letter to the Village of Sunrise Beach regarding the proposal to annex the properties on Seven Mile Cove. The letter stated that the Gator Point property was "currently part of an active application"

with Camden County Planning Commission and that Defendant Camden County Commission contended "that an annexation of the property by Sunrise Beach would be a direct attempt to circumvent Planning and Zoning in Camden County which would be detrimental to the entire County, as well as total disregard for the voters of Camden County." [Doc. # 82, Ex. AA.] The letter requested the petitions be denied.

On or about September 5, 2007, Defendants Commissioners Loraine and Gumm met with the Mayor of Sunrise Beach and two or three of the Trustees of the Village of Sunrise Beach. The Commissioners confirmed that they were opposed to the annexation of the Gator Point property, because any decision to annex the property could set a precedent that a property owner who disagreed with the zoning decision of Camden County affecting unincorporated territory could request annexation to defeat the application of the Camden County Land Use Code.

Then, on September 7, 2007, C. John Pleban, an attorney representing Defendant Camden County, wrote a letter to the Village of Sunrise Beach regarding the proposal to annex the Gator Point property. Pleban's letter stated:

> [S]hould annexation of these two properties continue to be pursued, the County will feel compelled to vigorously oppose the annexation under the provisions of Chapter 71 R.S.Mo., to include but not necessarily be limited to the issue of whether the annexation is reasonable and necessary to the proper development of the City. In an effort to avoid the County's public opposition to the City's plans, it is the County's hope that the City will abandon any plans that it might have to annex the two properties . . . . Obviously, the County values its good rapport with the City of Sunrise Beach and is confident that this issue will resolve itself consistent with the best interests of both governmental entities.

[Doc. # 82, Ex. CC.]

On September 10, 2007, the Board of Trustees for the Village of Sunrise Beach voted to deny both Petitions for Annexation.

On April 15, 2008, Plaintiff Glacier Park Investments, LLC ("Glacier Park") – of which Plaintiff Prewitt is the sole member – purchased the Gator Point property from Carl Placke for $1,150,000.

**C.      The Second Application to Rezone the Gator Point Property**

On April 10, 2008, "Carl Placke by Gary Prewitt" filed the Second Application to Rezone. [Doc. # 82, Ex. LL.] The Second Application requested the rezoning of the Gator Point property from R-1 Low Density Residential to B-2 General Commercial, instead of B-3 Shopping District Commercial.

As with the First Application, the same procedures were followed by Defendants with respect to the Second Application to Rezone. A public hearing was scheduled for May 21, 2008, and notice was provided to all property owners within 1,000 feet of the Gator Point property, the Village of Four Seasons – a municipality within 1-1/2 miles of the property – and the general public. Prior to the public hearing, Planning Administrator Hall prepared a "Staff Report" which recommended denial of the request for rezoning because "from the perspective of the road access it is restricted and poor," with "[m]any on-going complaints from the neighborhood . . . concerning traffic and parking problems caused by the mix of commercial and residential land-uses." [Doc. # 82, Ex. OO.]

At the May 21 public hearing, Plaintiff Glacier Park was represented by Attorney Greg Williams and Plaintiff Prewitt. The Planning Commission heard opposition from many residents, including complaints about noise, traffic, inaccessibility for emergency vehicles, decreased property values, and unruly guests of the current establishments on the peninsula. Other residents complained of congestion of boats in Seven Mile Cove causing rough water, concerns about the addition of 60 docks, complaints about trash left on the roadways – confirmed by photographs – and concerns about infrastructure repairs. In a June 18, 2008 meeting, the Planning Commission voted 8-2 against the Second Application to Rezone the Gator Point property.

As before, the next step was to schedule a public hearing, duly noticed, before Defendant Camden County Commission. Before the hearing, the Circuit Court of Camden County had entered an order remanding the First Application to Rezone for another hearing before Defendant Camden County Commission because the original recording of the September 20, 2007 hearing had failed to make an audio record. Defendant Camden County Commission approved Attorney Williams's motion to consolidate the remanded hearing regarding the First Application with the Second Application to Rezone.

At the consolidated hearing on August 21, 2008, Attorney Williams called several witnesses to testify, including Planning Administrator Hall, Plaintiff Prewitt, Spencer Duncan, a contractor who testified about plans to build a restaurant on the Gator Point property, Matt Marschke, an engineer who testified about traffic on the roadways and boat docks, and Wayne Stonestreet, an appraiser who testified about the value of the area's

properties. Additional individuals testified in support of the Applications for Rezoning, while many others spoke against the Applications. At the conclusion of the hearing, Defendant Commissioner Thomas and Defendant Commissioner Gumm voted to deny the First and Second Applications to Rezone.

On September 22, 2008, Plaintiff Prewitt and Placke filed a lawsuit in the Circuit Court of Camden County, Missouri, against Defendant Camden County Commission to review the denial of the First and Second Applications to Rezone the Gator Point property. On or about July 8, 2009, Prewitt dismissed without prejudice his claims to review the First and Second Applications to Rezone.

On May 29, 2009, Plaintiff Glacier Park filed a lawsuit in the Circuit Court of Camden County against all the Defendants in this case. There, Glacier Park seeks (1) a declaratory judgment that (a) Gator Point had been improperly zoned as residential property, (b) the refusal to rezone denies Gator Park substantive due process, and (c) the imposition of such illegal zoning constitutes a taking; and (2) damages for $2,700,000 under the Takings Clause of the U.S. Constitution and the Missouri Constitution. That lawsuit is presently pending in the Circuit Court of Camden County. [Doc. # 82, Ex. BBB.]

### D. Plaintiff Glacier Park's Application for Commercial Dock Permits

On March 24, 2009, Plaintiff Glacier Park filed an application with AmerenUE for commercial dock permits for the Gator Point property. AmerenUE receives applications for commercial dock permits at the Lake of the Ozarks, which it reviews after seeking state and local agency reviews. If AmerenUE recommends an application for a commercial dock

permit for approval, the application is sent to the Federal Energy Regulatory Commission ("FERC") for review. On April 3, 2009, AmerenUE filed Glacier Park's commercial dock permit application with FERC.

Two months later, in early June 2009, Defendant Commissioner Loraine was told by a citizen of Camden County that Glacier Park had applied for commercial dock permits for the Gator Point property. Loraine, the Presiding Commissioner of Camden County, instructed Planning Administrator Hall to contact AmerenUE about the potential issuance of commercial dock permits to the Gator Point property. On June 5, 2009, Hall emailed Jeff Green, AmerenUE's Shoreline Supervisor. Hall's email informed Green that the Gator Point property had been the subject of two requests to rezone the property from residential to commercial, which had both been denied. Hall wrote:

> If Camden County has any place or position in this dock approval process please be aware that we are strongly against the issuance of any such permits for this particular property. At the very least it would be appropriate to delay such permits until such time as Mr. Prewitt's lawsuit with Camden County over the zoning of the property is concluded. The issuance of commercial docks for an R-1 Low Density Residential property may very well place Camden County in an untenable position with regard to the law suit. It would also be disappointing to Camden County to see such a commercial multi-well dock facility be approved for a property that is and has been zoned residential for Five years.

[Doc. # 82, Ex. DDD.] By the time Green received this email from Hall, Glacier Park's application for the commercial dock permits was already pending with FERC, and AmerenUE did not take Hall's comments into consideration.

Instead, Green told Hall that Camden County could file a comment with FERC about the pending commercial dock application, which Hall did via FERC's website. Hall's comment brought to FERC's attention the fact that the Gator Point property was zoned residential and not commercial and that Camden County was a defendant in a lawsuit about the zoning of the property. Camden County requested FERC not to issue any commercial dock permits to a property zoned residential. A total of 37 protests were filed with FERC regarding the application for commercial dock permits at Gator Point.

On June 16, 2009, FERC entered an Order approving Plaintiff Glacier Park's application for commercial docking permits. The dock permits were issued on June 24, 2009. According to Green's deposition testimony, no objection by any governmental entity caused any delay in the issuance of the dock permits to Glacier Park.

### E.    Commercial Activities on the Gator Point Property

Also in June 2009, Defendant Camden County Commission received complaints that commercial activities were taking place on the Gator Point property. Defendant Commissioner Loraine requested Planning Administrator Hall to investigate whether commercial activities were indeed taking place there. Hall found that commercial land use activities were occurring on the property, including the sale of beverages, both alcoholic and non-alcoholic, and the rental of facilities such as cabanas. Improvements built on the Gator Point property – including a bar facility, bathroom, cabanas, loungers, a volleyball court, patios, boat docks, and a swim-up pool bar – cost approximately $1,850,000.

Hall then contacted the Missouri Division of Alcohol and Tobacco Control ("ATC") regarding liquor licenses for the Gator Point property. Hall was referred to Karl Kost, the liquor control agent for Camden County. Kost confirmed that three caterer's licenses for the sale of alcohol had been issued for the property to Plaintiff Shady, LLC, which operates Shady Gators on the adjacent property. Plaintiffs admit that Shady, LLC has held events on the Gator Point property. [Doc. # 88 at 21.] Kost told Hall that the Missouri ATC did not consider zoning when liquor licenses were issued. The ATC denied no application for a catering permit filed by Shady, LLC. Kost testified that the issuance of no permit was ever delayed.

On July 7, 2009, Planning Administrator Hall sent a letter to Plaintiff Glacier Park regarding a "Zoning Violation at 'Lazy Gators' Property." [Doc. # 82, Ex. HHH.] Hall noted in the letter that, beginning on the Memorial holiday weekend of May 2009, commercial land use activities on the Gator Point property began including the sale of alcoholic beverages and the rental of cabanas. The letter informed Glacier Park that on June 10, 2009 Defendant Camden County's Planning Commission had posted a cease and desist zoning violation order on-site to give Glacier Park an opportunity to address the problem. Finally, the letter warned Glacier Park that Defendant Camden County "will be seeking compliance with the criminal misdemeanor process unless you cease all commercial activities on the identified property, so long as the property is zoned R-1 Low Density Residential." *Id.* However, before Camden County enforced the zoning regulation, Glacier Park filed this lawsuit against Camden County.

13

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a district court must look at the record and any inferences to be drawn from it in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248.

### B. Plaintiffs' Federal Claims Under § 1983

Plaintiffs assert that Defendants, acting under the color of state law, violated their civil rights under 42 U.S.C. § 1983. [Doc. # 1 at 10.] Count I alleges a violation of substantive due process under the Fourteenth Amendment. *Id.* Count II alleges a violation of procedural

due process under the Fourteenth Amendment. *Id.* at 11. Count III alleges a taking of property without just compensation under the Fifth Amendment. *Id.* at 12.

### 1. Plaintiffs' Due Process Clause Claims

The Due Process Clause of the Fourteenth Amendment provides that "No State . . . shall deprive any person of life, liberty, or property, without due process of law." Plaintiffs trace Defendants' alleged violations of the Due Process Clause to three distinct occurrences: (a) Defendants' denial of the applications to rezone; (b) Defendants' actions toward outside agencies; and (c) Defendants' actions toward the Village of Sunrise Beach. Plaintiffs have not made out a prima facie case that Defendants violated procedural due process through any of these occurrences because (1) Plaintiffs have not established that they had a Constitutionally-protected property interest; and (2) even if Plaintiffs had a protected property interest, there is insufficient evidence that Defendants deprived them of such a property interest without sufficient procedural safeguards. Plaintiffs have also failed to make out a prima facie case that Defendants violated substantive due process because there is insufficient evidence that Defendants' conduct was truly irrational.

### (a) The First and Second Applications to Rezone

### (i) Procedural Due Process Claim

First, Plaintiffs have not shown that they had a Constitutionally-recognized property interest in the rezoning of the Gator Point property. Plaintiffs must first show that they have a "protected property interest to which the Fourteenth Amendment's due process protection applies." *Bituminous Materials, Inc. v. Rice County, Minn.*, 126 F.3d 1068, 1070 (8th Cir.

1997).  A protected property interest must be more than a "mere subjective expectancy." *Id.*
In the zoning context, a unilateral expectation of receiving approval for rezoning is insufficient to establish a legitimate claim of entitlement unless the land use authority lacks discretion to deny a particular application for rezoning under the applicable law.  *Walker v. City of Kansas City, Mo.*, 911 F.2d 80, 94-95 (8th Cir. 1990), *cert. denied*, 500 U.S. 941 (1991) ("Precisely because the zoning ordinance 'place[s] no substantive limitations on official discretion,' it does not obligate the City Council, as a constitutional matter, to afford [Plaintiff] Walker any particular process . . . ." (citation omitted)).

Plaintiffs do not attempt to show that Defendants lacked discretion to deny an application for rezoning.  Rather, Plaintiffs argue that their legitimate claim of entitlement falls within the broad definition of a "vested right," described by the Missouri Supreme Court in an inapposite case:

> It is well-settled that "[t]he constitutional prohibition against laws that operate retrospectively applies if the law in question impairs some vested right or affects past transactions to the substantial prejudice of the parties."  A "vested right" has been defined as "a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another."

*La-Z-Boy Chair Co. v. Director of Economic Development*, 983 S.W.2d 523, 524 (Mo. banc 1999) (citations omitted); [Doc. # 88 at 30.]  The Court is not persuaded that it should substitute the definition of a vested right – extracted from jurisprudence interpreting the Missouri Constitution's prohibition of ex post facto laws – for Eighth Circuit caselaw specifically addressing what constitutes a legitimate claim of entitlement in the zoning context.

Plaintiffs also attempt to establish as a controverted "fact" their alleged "property interest" in Gator Point. [Doc. # 88, ¶ 17.] However, the deposition of Planning Administrator Hall, to which Plaintiffs cite, includes only Hall's admission that "Mr. Prewitt had some interest in" purchasing the property. [Doc. # 88, Ex. 7 at 148.] It was clear that Planning Administrator Hall admitted only that Prewitt had an "interest" in the land in the non-legal sense – i.e., he was interested in purchasing it.

Under the Camden County Land Use Code and Chapter 64 of the Missouri Revised Statutes, Defendant Camden County Commission was obligated to hear and decide applications requesting amendment to the Zoning Map. [Doc. # 82, Ex. F at ¶ 1402]; Mo. Rev. Stat. §§ 64.640, 64.860. There is no requirement that Defendants Commissioners grant an amendment to the zoning map based on any evidence put forth by an applicant. *Id.* As in *Walker*, nothing in the law entitled Prewitt to believe that Defendants "would – much less must – approve his application." *Walker*, 911 F.2d at 94. Because Plaintiffs have adduced no evidence that Defendants lacked discretion to deny the applications for rezoning, it could not be concluded that Plaintiffs had a Constitutionally-protected property interest in the rezoning of the Gator Point property. Therefore, Defendants could not have deprived Plaintiffs of a such a protected property interest in violation of procedural due process.

Second, even if Plaintiffs had a Constitutionally-protected property interest in the rezoning applications, there is insufficient evidence that Defendants deprived them of such a property interest without sufficient procedural safeguards. Plaintiffs claim that "Defendants denied re-zoning applications without providing Defendants with a fair and

impartial decisionmaker as to those applications." [Doc. # 88 at 31.] Plaintiffs argue that it can be inferred from Defendants' actions – specifically, how they repeatedly "approached non-party agencies to interfere with Plaintiffs' lawful business, and actually threatened to sue the Village of Sunrise Beach" – that Defendants were biased against them. *Id.*

Beyond the fact that Plaintiffs' commercial activities can hardly be described as "lawful," considering the clear violation of Defendant Camden County's zoning regulations, Defendants also point out the legal presumption that decisionmakers are honest and impartial. [Doc. # 82 at 14 (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).] Plaintiffs must put forth evidence to "overcome a 'presumption of honesty and integrity in policymakers with decision making power' and show that the . . . decision . . . was 'infected with bias.'" *Krentz v. Robertson*, 228 F.3d 897, 905 (8th Cir. 2000) (quoting *Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 497 (1976)).

Plaintiffs have not addressed this caselaw, preferring to rely solely on their argument that a reasonable inference can be made that "the Commissioners had prejudged both the first and second applications for rezoning." [Doc. # 88 at 31.] Plaintiffs fail to adduce sufficient evidence from which a reasonable juror could conclude that Defendant Commissioners were not fair and impartial when deciding whether to rezone the Gator Point property. In fact, Plaintiffs assert no evidence beyond the fact that Defendants communicated with other agencies and a municipality within Camden County to ensure the enforcement of the law. Meanwhile, the factual record indicates that Defendants exhaustively investigated the issues before them. Therefore, Plaintiffs' procedural due process claim involving the applications

for rezoning also fails for lack of sufficient evidence of a deprivation of the alleged property interest.

**(ii) Substantive Due Process Claim**

Plaintiffs concede that the legal standard for a substantive due process claim in this context is whether Defendants' conduct was "truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law." *Creason v. City of Washington*, 435 F.3d 820, 824 (8th Cir. 2006) (quoting *Klein v. McGowan*, 198 F.3d 705, 710 (8th Cir. 1999)); [Doc. # 88 at 32.] Plaintiffs argue that Defendants' denial of the rezoning applications was "truly irrational" because the Gator Point property "is not suitable for residential use and its 'highest and best use' is commercial." [Doc. # 88 at 32.]

Plaintiffs invite the Court to reexamine the merits of Defendants' decision to deny the rezoning applications. Such an approach would convert the Due Process Clause into a "constitutionalized Administrative Procedure Act setting up the federal courts as a forum for review of every run-of-the-mill land-use dispute." *Lemke v. Cass County*, 846 F.2d 469, 472 (8th Cir. 1987). The Court declines to accept this invitation to reassess whether the Gator Point property should have been rezoned.

Defendants had a valid public purpose in maintaining and enforcing zoning regulations. Those public purposes were laid out in Chapter 64 of the Missouri Revised Statutes, with which Defendants' Land Use Code complied:

> For the purpose of promoting health, safety, morals, comfort or the general welfare of the unincorporated portion of counties . . . to conserve and protect property and building values, to secure the most economical use of the land,

19

and to facilitate the adequate provision of public improvements all in accordance with a comprehensive plan, the county commission . . . shall have power after approval by vote of the people . . . to regulate and restrict, by order of record, in the unincorporated portions of the county, the height, number of stories, and size of buildings, . . . and use of buildings, structures and land for trade, industry, residence or other purposes . . . .

Mo. Rev. Stat. §§ 64.620, 64.850.

Here again, there is no need to rehash the voluminous record – including Planning Administrator Hall's staff report, numerous resident complaints, and examinations of witnesses – upon which Defendants based their decision to deny the applications to rezone the Gator Point property. Plaintiffs have failed to adduce sufficient evidence from which a reasonable juror could conclude that Defendants' decision not to rezone the Gator Point property commercial was "truly irrational." Therefore, Plaintiffs' substantive due process claim involving the applications for rezoning also fails.

### (b) The Applications for Commercial Permits

Plaintiffs' Brief in Opposition devotes only one paragraph to what Plaintiffs allege are violations of procedural and substantive due process arising from Defendants' interactions with AmerenUE, FERC, and the Missouri ATC. According to Plaintiffs, Defendants attempted "to interfere with the issuance of lawful permits Plaintiffs had requested from those agencies." [Doc. # 88 at 32.]

### (1) Procedural Due Process Claim

Plaintiffs do not allege that they were denied notice, a hearing, or a fair and impartial decisionmaker with respect to their applications for the commercial dock permit and the

caterer's licenses for the sale of alcohol. Instead, Plaintiffs point to a single "fact" – that "Defendants' contacts with special agent Karl Kost of the Missouri Division of Alcohol and Tobacco control [sic] caused costly delays in Plaintiff Shady, LLC's obtaining lawful catering permits." [Doc. # 88 at 32.]

Even assuming arguendo that Plaintiffs could have a Constitutionally-protected property interest in securing commercial permits for property zoned residential and not commercial, Plaintiffs have pointed to no evidence from which a reasonable jury could conclude that Defendants' communications with AmerenUE, FERC, or the Missouri ATC could have deprived Plaintiffs of such a property interest. Regarding Defendants' sole factual reference, to the alleged "costly delays" resulting from Defendants' communication with Kost, Plaintiffs' citation to Plaintiff Prewitt's deposition reveals only the following allegation:

> And then at the time of the interference from the County, [Kost] kicked out what I recall over almost a week of catering permits from us because they didn't – we submitted them correctly, but not by time or the date of, you know, the required by his permitting.
> Q. Okay. So he told you that he had to deny one weeks of catering permits for Shady LLC for Gator Point because they hadn't been filed timely pursuant to the State regulations?
> A. That's correct.

[Doc. # 88, Ex. 2 at 213.] Thus, Plaintiffs' sole factual allegation to support their claim involving the commercial permits amounts to an admission by Plaintiff Prewitt that he failed to timely file the catering permit application.

Plaintiffs' procedural due process claim involving the applications for commercial permits fails for lack of sufficient evidence of a deprivation of the alleged property interest.

21

### (ii)  Substantive Due Process Claim

Plaintiffs do not explain how Defendants' interactions with AmerenUE, FERC, or the Missouri ATC violated substantive due process under the Fourteenth Amendment.  There is no factual support for the argument that Defendants' conduct relating to the catering or commercial dock permits was "truly irrational."  Given the reports received by Defendants regarding the violation of the zoning regulation at the Gator Point property, Planning Administrator Hall's decision to contact the ATC on behalf of Defendant Camden County about the catering permits was undoubtedly rational.  Plaintiffs point to no other factual allegations supporting this substantive due process claim.  Here too, Plaintiffs have failed to submit specific facts showing that there is a genuine issue for trial regarding the commercial permit applications.

### (c)  The Petitions for Annexation

### (1)  Procedural Due Process Claim

Regarding the petitions for annexation by the Village of Sunrise Beach, Plaintiffs do not allege that they were denied notice, a hearing before the Trustees of Sunrise Beach, or a fair and impartial decisionmaker.  Instead, Plaintiffs argue: "The extent of the process afforded by the Village of Sunrise Beach is irrelevant in the face of the threatening influence of the Camden County Commission."  [Doc. # 88 at 33.]  Plaintiffs assert that Defendants "have no authority whatsoever to decide the annexation issue," and that "the threats served no useful purpose and were entirely ultra vires actions."  [Doc. # 1 at ¶¶ 32, 36.]

Here again, it is difficult to imagine how Plaintiffs could have a Constitutionally-protected property interest in a municipal annexation. A municipality's decision to annex unincorporated territory is a matter of general concern rather than individual entitlement. This process is clearly discretionary; in fact, the minutes for the August 27, 2007 hearing were taken under the heading, "VOLUNTARY ANNEXATION HEARING." [Doc. # 82, Ex. Z.] Nonetheless, Plaintiffs again attempt to erect a Chinese wall around the offices of Defendant Camden County. Above, Plaintiffs argued that Defendants could not communicate horizontally, with other agencies, regarding issues related to the enforcement of the Camden County zoning regulations. Here, Plaintiffs argue that the U.S. Constitution prohibits Defendants from communicating vertically, across levels of intrastate government.

Even assuming arguendo a protected property interest, Plaintiffs cite no law supporting the restrictive theory of government that they assert the Due Process Clause imposes on the State of Missouri. It is well settled that:

> A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures. This inquiry examines "the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." Relevant factors include the affected private interest, the risk of an erroneous deprivation, the probable value of additional procedural safeguards, and the government's interest, including burdens that additional safeguards would entail. In most cases, some type of predeprivation notice and hearing are constitutionally required before a property interest is invaded, but in some situations meaningful postdeprivation remedies are constitutionally sufficient.

*Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998) (citations omitted).

Plaintiffs have not challenged the procedural safeguards built into the Village of Sunrise Beach's administrative procedure. Meanwhile, the relevant Missouri statute provides for a "public hearing" allowing "any interested person" to "present evidence regarding the proposed annexation. Mo. Rev. Stat. § 71.012.

> If, after holding the hearing, the governing body of the city, town or village determines that the annexation is reasonable and necessary to the proper development of the city, town or village, and the city, town or village has the ability to furnish normal municipal services to the area to be annexed within a reasonable time, it may . . . annex the territory by ordinance without further action.

*Id.*

Given the clear governmental interest at stake in the context of a proposed municipal annexation, these procedures provide sufficient safeguards to individual residents of unincorporated territory seeking annexation. Plaintiffs were granted the opportunity to be heard before the public decision whether to annex the territory was made. In their communications with Sunrise Beach, Defendants merely invoked the requirement of the Missouri statute that the municipality proposing annexation confirm that the annexation is reasonable and necessary. This requirements amounts to a due diligence check on municipalities before they annex unincorporated territory.

Furthermore, according to the deposition testimonies of Village of Sunrise Beach Trustees Curt Mooney, Deborah Stoller and Kenneth Gerardy, no objection from Defendants Camden County or the Camden County Commission had anything to do with their votes against the Petitions for Annexation. [Doc. # 82, ¶¶ 73, 80, 84.] Mooney, Chairman of the

Board of Trustees, testified that he was concerned that the Gator Point property was not contiguous with the Village of Sunrise Beach. [Doc. # 82 ¶ 71.] Chairman Mooney also testified that the annexation of the property across the lake from Sunrise Beach would not be reasonable because he did not know how Sunrise Beach would provide services, such as police protection. *Id.* In response, Plaintiffs cite the deposition testimony of Sunrise Beach Trustee Teddy Hoover – who voted in favor of the annexation – that the other trustees voted against the annexation because they did not want to "make waves" with the County. [Doc. # 88, Ex. 6 at 38.] However, Hoover testified that this opinion was based on what other trustees told him. Hoover's opinion, based on hearsay, is insufficient evidence to prove that the other Sunrise Beach trustees are misrepresenting the motivation behind their votes against annexation.

The deposition testimonies of the Trustees of the Village of Sunrise Beach also confirm that Defendants' Attorney Pleban did not threaten litigation in his September 7, 2007 letter. [Doc. # 82 at ¶¶ 70, 80, 84.] Pleban's letter did suggest that the County would vigorously oppose the annexation under the provisions of Chapter 71 of the Missouri Revised Statutes, citing the issue of whether the annexation was reasonable and necessary to the proper development of the City of Sunrise Beach. As discussed above, Mo. Rev. Stat. § 71.012 requires that the annexing municipality hold a public hearing and confirm that the annexation is reasonable and necessary. The invocation of this statutorily-mandated process does not constitute litigation.

There is also no evidence in the record to support the allegation in Plaintiffs' Complaint that "Defendants threatened to pull road maintenance funds from the City of Sunrise Beach if it annexed Plaintiffs' properties." [Doc. # 1 at ¶ 35.] It is uncontroverted that Defendant Camden County has not provided any funds to the Village of Sunrise Beach to maintain roads or perform road projects in the village from 2007 to the present time. [Doc. # 82, ¶ 67.]

For all of these reasons, Plaintiffs' procedural due process claim involving the application for annexation by the Village of Sunrise Beach fails for want of evidence.

### (ii) Substantive Due Process Claim

Finally, Plaintiffs' claim that Defendants' conduct relating to the annexation was "ultra vires" would, if true, constitute violations of state law not protected by the doctrine of substantive due process. *Chesterfield Development Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992) (citing *Myers v. Scott County*, 868 F.2d 1017, 1019 (8th Cir. 1989)).

There is no factual support for the argument that Defendants' conduct relating to the proposed annexation was "truly irrational." Defendants' decision to oppose annexation reflected the legitimate policy position of Defendant Camden County, based on Missouri law and related to a central issue of governmental concern. Plaintiffs have pointed to no facts to the contrary, referring only to the unproven "threatening influence of the Camden County Commission." [Doc. # 88 at 34.] Thus, Plaintiffs have failed to submit specific facts showing that there is a genuine substantive due process issue for trial.

### 2. Plaintiffs' Takings Clause Claim

Plaintiffs' Count III alleges a taking of property without just compensation under the Fifth Amendment. The Takings Clause of the Fifth Amendment provides, in relevant part, ". . . nor shall private property be taken for public use without just compensation."

Defendants argue that Plaintiffs' Takings Clause claim is not ripe for adjudication in federal court because Plaintiffs have not exhausted state remedies. The Supreme Court has held that the Takings Clause "does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson County Regional Planning Com'n. v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). Consequently, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Id.* at 195. The Eighth Circuit has repeated this "general rule . . . that a plaintiff must seek compensation through state procedures before filing a federal takings claim against the state." *von Kerssenborck-Praschma v. Saunders*, 121 F.3d 373, 379 (8th Cir. 1997). Missouri law allows a property owner to seek compensation through an inverse condemnation action – the procedure identified by the Eighth Circuit in *von Kerssenborck-Praschma* as the proper avenue for seeking just compensation in Missouri. *Id.* at 379 n.5; *see*, *e.g.*, *Collier v. City of Oak Grove*, 246 S.W.3d 923, 925 (Mo. banc 2008) (a takings claim "encompasses inverse takings, where the government takes or damages land, sometimes unintentionally, without going through an official process.").

Here, Plaintiff Glacier Park has a lawsuit pending against all Defendants in the Circuit Court of Camden County alleging a taking of the Gator Point property in violation of the U.S. Constitution and the Missouri Constitution. As in *von Kerssenborck-Praschma*, it cannot be said that Plaintiffs' right to just compensation has been violated here, because Plaintiffs have not sought compensation from the State of Missouri. 121 F.3d at 379. Therefore, Plaintiffs' takings claim here is not ripe for adjudication in federal court, and summary judgment for Defendants is appropriate.

### C. Plaintiffs' Federal Claim Under § 1985

"Because Plaintiffs no longer allege class-based discrimination, Plaintiffs do not contest summary judgment as to their claim under 42 U.S.C. Section 1985." [Doc. # 88 at 38.] Therefore, summary judgment is granted as to Plaintiffs' § 1985 claim.

### D. Plaintiffs' State Law Claim of Tortious Interference

In Count VI of their Complaint, Plaintiffs allege that "Defendants, through their deliberate conduct and/or illegal actions . . . interfered with Plaintiffs' business expectancy." [Doc. # 1 at 14.] This claim is of dubious merit, considering the prospective and wishful nature of the alleged "reasonable business expectancy in conducting business transactions with their customers at Gator Point," not to mention the police power of the state delegated to Defendants under Mo. Rev. Stat. § 64.005 et seq. *Id.* However, the Court need not reach the merits of this state law claim of tortious interference because of the doctrines of sovereign immunity and official immunity.

#### 1. Sovereign Immunity

In Missouri, a public entity is afforded sovereign immunity from tort actions. *Trumbo v. Metropolitan St. Louis Sewer Dist.*, 877 S.W.2d 198, 201 (Mo. Ct. App. 1994). More specifically, under Mo. Rev. Stat. § 537.600, such sovereign immunity "as existed at common law in this state prior to September 12, 1977" bars a suit unless the injury alleged arises from (1) operation of a motor vehicle by an agent of a governmental entity, (2) a dangerous condition on the entity's property, or (3) under certain circumstances, the public entity has waived sovereign immunity by purchasing liability insurance. Mo. Rev. Stat. § 537.600; *Parish v. Novus Equities Co.*, 231 S.W.3d 236, 245 (Mo. Ct. App. 2007) (citations omitted). Under Missouri law, the plaintiff bears the burden of proving the existence of an insurance policy waiving sovereign immunity. *Hummel v. St. Charles City R-3 Sch. Dist.*, 114 S.W.3d 282, 284 (Mo. Ct. App. 2003).

Defendant Camden County alleges – and Plaintiffs have not controverted – that its policy contains a "Public Sector Services Missouri Governmental Immunity Endorsement" that "provides that the insurance agreement will apply to tort liability of any 'protected person' only if the 'protected person' is not immune from such liability under Missouri law, and that the purchase of the policy is not a waiver under Mo. Rev. Stat. § 537.610 . . . ." [Doc. # 82 at 18-19.] "A public entity does not waive its sovereign immunity by maintaining an insurance policy where that policy includes a provision stating that the policy is not meant to constitute a waiver of sovereign immunity." *Langley v. Curators of the Univ. of Mo.*, 73 S.W.3d 808, 811 (Mo. Ct. App. 2002). Plaintiffs failed to present any evidence to show that the policy is not as represented by Defendant Camden County.

However, Plaintiffs argue that "counties are not entitled to the protections of sovereign immunity where 'the injury is caused by the municipality performing a proprietary function as opposed to a governmental function.'" [Doc. # 88 at 34 (quoting *Bennartz v. City of Columbia*, 300 S.W.3d 251, 259 (Mo. Ct. App. 2009)).] However, *Bennartz* involved a suit against a municipality, not a county. The relevant portion of *Bennartz* cites *State ex rel. Bd. of Trustees of City of North Kansas City Memorial Hosp. v. Russell*, which explains:

> When, as in this case, the defendant is a municipality, the analysis focuses on the activity giving rise to the injury to determine whether the activity was an exercise of a governmental or proprietary function. . . . There is some confusion in the cases as to whether this governmental/proprietary distinction applies to any public entities other than municipalities. It may be that prior to September 12, 1977 [when the common law doctrine of sovereign immunity was codified in Mo. Rev. Stat. § 537.610], the distinction applied to school districts also.

843 S.W.2d 353, 358, n.8 (Mo. banc 1992) (citations omitted). Plaintiffs have cited no case in which a county was held to have waived its sovereign immunity by performing a proprietary function, as opposed to a governmental function, and it appears very doubtful that this distinction would apply to Missouri's counties. *See Helamicek Bros., Inc. v. St. Louis County*, 883 S.W.2d 108, 109 (Mo. Ct. App. 1994) (quoting *Coleman v. McNary*, 549 S.W.2d 568, 569 (Mo. Ct. App. 1977) ("Though the doctrine of sovereign immunity protects a municipality only against claims which arise from exercise of its governmental function, a county is protected against all claims.").

Regardless, Plaintiffs' argument that Defendants performed a proprietary function does not pass muster. Plaintiffs cite the rule from *Bennartz* that "proprietary functions are

those performed by the municipality for profit or for the special benefit of the municipality." *Bennartz*, 300 S.W.3d at 259. Applying this rule, Plaintiffs conclude that Defendants Camden County and the Camden County Commission "were acting solely for the special benefit and convenience of Camden County itself and not in the interests of the common good." [Doc. # 88 at 35.]

As *Bennartz* explains, proprietary functions "often involve the provision of services or conveniences to a municipality's own citizens" and there is a fine line between services rendered for profit – i.e., for the benefit of the municipality – and services for which a user fee is charged and a public good is provided. *Bennartz*, 300 S.W.3d at 259. Plaintiffs attempt to expand this narrow exception by seizing upon the language describing a proprietary function as performed "for the special benefit of the municipality," and governmental function as "performed for the common good of all." *Id.* Consistent with Plaintiffs' theory that Defendants' acts were ultra vires and meant to spite them, Plaintiffs suggest that Defendants' communications with other agencies and the municipality of Sunrise Beach are equivalent to the type of profit-driven ventures that Missouri caselaw recognizes as proprietary. However, Defendants acted with the purpose of enforcing their zoning regulation, not to earn a profit – much less to secure an abstract "special benefit" of schadenfreude. Defendant Camden County's enactment and enforcement of zoning regulations pursuant to Mo. Rev. Stat. § 64.005 et seq. are acts performed "as an agent of the state," not proprietary acts. *Id.* Therefore, even if the governmental/proprietary function distinction were to apply to counties, Defendant Camden County and its governing

31

Commission would still enjoy sovereign immunity from Plaintiffs' state law tortious interference claim.

### 2. Official Immunity

As to the individual Defendants Commissioners Loraine, Thomas, and Gumm, "the doctrine of official immunity protects public officials from civil liability for injuries arising out of their discretionary acts or omissions performed in the exercise of their official duties." *James ex rel. James v. Friend*, 458 F.3d 726, 731 (8th Cir. 2006). However, official immunity does not shield officials from liability arising from their negligent performance of ministerial acts or functions. *Id.*; *Harris v. Munoz*, 43 S.W.3d 384, 387 (Mo. Ct. App. 2001).

"Plaintiffs agree that the Defendant Commissioners' tortious actions were not merely ministerial." [Doc. # 88 at 35.] Instead, Plaintiffs argue that "Official Immunity does not protect government actors from liability for acts that are done in bad faith or with malice or conscious wrongdoing." *Id.* (citing *Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005)). Plaintiffs quote from *Blue*:

> A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. . . . Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.

*Blue*, 170 S.W.3d at 479 (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986)). Considering Defendants' alleged "threats of litigation" and "contacts with AmerenUE and FERC," Plaintiffs conclude that at least a "jury should be given the

opportunity to examine all the evidence and determine whether the Commissioners" are entitled to official immunity.  [Doc. # 88 at 36.]

Here, no reasonable jury could conclude that Defendants Commissioners Loraine, Thomas, or Gumm acted with malice, bad faith, or conscious wrongdoing.  Rather than acting "contrary to [their] duty" or with "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty . . . or ill will partaking of the nature of fraud" – to the contrary – Plaintiffs' accusations suggest that Defendants Commissioners could be faulted, at most, for too zealously performing their duties.  Clearly no fraud or moral obliquity was involved.  Defendants acted in their official capacities at all times, putting their legal concerns in writing, and operating through official channels.  For example, Planning Administrator Hall, acting at the direction of Commissioner Loraine, wrote the following to AmerenUE: "If Camden County has any place or position in this dock approval process please be aware that we are strongly against the issuance of any such permits for this particular property." [Doc. # 82, Ex. DDD.]  Similarly, Defendants' attorney, Pleban, made his legal concerns clear in his letter to the Village of Sunrise Beach, without any indication of conscious wrongdoing.

There is simply no evidence from which a reasonable jury could conclude that Defendants Commissioners Loraine, Thomas, or Gumm acted with malice, bad faith, or conscious wrongdoing.  As Plaintiffs concede, their acts were discretionary.  Therefore, the Commissioners enjoy official immunity from Plaintiffs' state law claim of tortious interference.

For the reasons stated above, summary judgment for Defendants is appropriate for Plaintiffs' state law claim of tortious interference.

**E.  Plaintiffs' Claim for Injunctive Relief**

Count V of Plaintiffs' Complaint seeks injunctive relief against all Defendants, claiming that the "actions and conduct of Defendants discussed above will continue absent an order from this Court enjoining such future illegal, unconstitutional, and egregious conduct." [Doc. # 1 at ¶ 95.] Because the Court has granted summary judgment for Defendants on all other Counts, there is no basis to conclude that Defendants' conduct was "illegal, unconstitutional, and egregious."  Therefore, the Court grants summary judgment in favor of Defendants on Count V as well.

**III.    Conclusion**

Accordingly, it is hereby ORDERED that Defendants' Motion for Summary Judgment [Doc. # 81] is GRANTED.


                                                   s/ NANETTE K. LAUGHREY
                                                   NANETTE K. LAUGHREY
                                                   United States District Judge

Dated: October 4, 2010
Jefferson City, Missouri